UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANETTE BERNINGER,           :
                             :    NO. 1:04-CV-00490
          Plaintiff,         :
                             :    **OPINION & ORDER**
                             :
     v.                      :
                             :
                             :
UNIVERSITY OF CINCINNATI,    :
                             :
          Defendant.

          This matter is before the Court on the Defendant's Motion

for Summary Judgment (doc. 10), the Plaintiff's Memorandum in

Opposition to Defendant's Motion for Summary Judgment (doc. 16),

and the Defendant's Reply Memorandum in Support of Its Motion for

Summary Judgment (doc. 18).  Plaintiff, Danette Berninger

(hereinafter "Berninger"), filed her Complaint in this matter on

July 30, 2004 alleging sexual harassment and retaliation in

violation of Title VII of the Civil Rights Act of 1964 as amended,

42 U.S.C. § 2000, et seq (doc. 1).  Defendant answered Plaintiff's

Complaint (doc. 3), and subsequently filed a Motion for Summary

Judgment (doc. 10).  The Plaintiff does not oppose summary judgment

on the sexual harassment claim (doc. 16).  However, facts relating

to that claim are pertinent for the Plaintiff's retaliation claim,

and they will be set forth below.

**FACTS**

          Berninger was hired by the University of Cincinnati

(hereinafter "UC") in 1997 as an accountant (doc. 10).  In January

1999, she transferred to the OB/GYN Department as an accountant (Id.). Beginning in late 2001 with the departure of the previous business manager, Berninger's primary duties were monitoring expenses, communicating with researchers about the status of their grants, and making sure the different grants that funded research activities stayed on budget (Id.). The majority of research conducted by the Department is funded by these grants from outside agencies and sources, and proper management of the grants is crucial to maintaining the research activities of the various doctors and Ph.Ds in the Department, who were referred to as principal investigators or P.I.s (hereinafter "P.I.s") (Id.).

In November 2001, David Astles (hereinafter "Astles") began working in the OB/GYN Department as a Senior Business Administrator (Id.). Astles' job duties included oversight of the administrative side of the Department's activities, including grant management (Id.). He was Berninger's supervisor. Various P.I.s began to complain to Berninger about unsatisfactory work performance in late 2001 and early 2002, including lack of notification when grants were overbudget and late reports on grant status (Id.). Outside funding agencies that provided the grants also complained about late progress reports (Id.). In October 2002 the Vice-Chair of the Department personally complained about Berninger's work performance. Because of frustration with Berninger's performance, various P.I.s began to go to other

2

accountants in the Department for grant-related issues. This resulted in the blurring of job responsibilities and tension between the different accountants in the office, particularly between Berninger and another accountant named Sue Swearingen (hereinafter "Swearningen") (Id.). In late 2002 Astles met with Berninger to discuss her job performance.

About this time, Berninger began to experience what she described as sexual harassment in her encounters with Astles. In December of 2002 Berninger called the University of Cincinnati Equal Employment Office (hereinafter "EEO") to complain about Astles, but her call was never returned (doc. 16). She also discussed the matter with the Ombuds Office in January 2003, which advised her to make a formal complaint in writing (Id.). The Ombuds Office contacted Astles to resolve this issue, and Plaintiff alleges that after his contact with the Ombuds Office, Astles warned Plaintiff not to contact them again (Id.).

In late 2002 and early 2003 Beringer's job performance was still being questioned by Astles, coworkers, and P.I.s. In February 2003 Astles talked to Beringer about three new complaints from P.I.s on serious grant related issues (doc. 10). Because of continued performance issues, Astles began to discuss Beringer's termination with the Chair of the Department, as well as UC's Labor Relations Department (Id.).

In March 2003, Beringer made a formal complaint to UC's

internal Equal Employment Office, alleging that Swearingen and others had created a hostile work environment (Id.). Berninger also alleged that Astles had sexually harassed her (Id.). During the course of the investigation, Astles was instructed not to take any action against Berninger. It is undisputed that Astles complied with this order (Id.). In September 2003 the EEO issued a report finding that there was no sexual harassment by Astles, and that Berninger had contributed to the creation of a hostile work environment (Id.).

Astles subsequently left the Department in January 2004, and was replaced by Martin Ludwig (hereinafter "Ludwig") (Id.). Upon meeting with Ludwig prior to leaving, Astles said nothing negative about Berninger and did not single her out to Ludwig (doc. 16). Ludwig subsequently met with all employees during his first week on the job. Various P.I.s reiterated their complaints about Berninger to Ludwig (doc. 10). Ludwig's initial meetings also included a meeting with Berninger to discuss job expectations (doc. 16). The content of this meeting is somewhat disputed, but all that is material is that this meeting was not disciplinary in nature (doc. 10, doc. 16).

From February 2004 to April 2004 various problems relating to Berninger's job performance and grant management were brought to Ludwig's attention, primarily by research staff and other P.I.s. One of these instances resulted in a P.I.'s loss of

4

his grant funding, elimination of his staff, and loss of his research labs, hindering his ability to obtain future funding (doc. 10). No formal action was taken to address these concerns (doc. 16). Additionally, at some point after his arrival in the Department, Ludwig learned of Berninger's prior complaint against Swearingen and Astles (Id., doc. 18).

In July 2004, Ludwig met with Berninger and informed her that he was terminating her employment (doc. 10). Plaintiff alleges that the original basis for the termination was an instance of alleged dishonesty, which was then changed to job performance issues (doc. 16). Defendant contends that job performance was the sole rationale for Plaintiff's termination (doc. 10). Berninger appealed her termination through UC's internal processes, which upheld the termination (Id.).

**APPLICABLE LEGAL STANDARD**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and

5

Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

6

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

8

**ANALYSIS**

**A. Berninger's Claim of Sexual Harassment Against the University of Cincinnati**

As noted above, the Plaintiff does not oppose summary judgment for the Defendant on her claim of sexual harassment (doc. 16), because the Plaintiff did not file a timely charge with the Equal Employment Opportunity Commission.  The Court agrees that Plaintiff's sexual harassment claim fails as a matter of law, and summary judgment for the Defendant is appropriate on this claim.

**B. Berninger's Claim of Retaliation Against the University of Cincinnati**

The Defendant has moved for summary judgment on the Plaintiff's claim of retaliation on the grounds that the Plaintiff has failed to establish a prima facie case of retaliation.  To prove a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in protected activity; (2) the defendant had knowledge of her protected conduct; (3) she suffered an adverse employment action; and (4) a causal link existed between the protected activity and an adverse action.  See Weigel v. Baptist Hosp. Of East Tennessee, 302 F.3d 367, 381 (6th Cir. 2002).  It is uncontested that Berninger's March 2003 complaint constitutes protected activity, and that UC, including Ludwig, had knowledge of this protected activity.  It is also uncontested that she later suffered an adverse employment action, namely, being terminated in July of 2004.  The basis for the

9

Defendant's motion is that no causal link exists between the protected activity and the adverse employment action.

To prove a causal link, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken" but for the exercise of the protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). It is true that "[a] causal link may be shown through knowledge combined with closeness in time." Johnson v. University of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000); see also Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555, 563 (6th Cir. 2004). However, when determining whether a causal link exists, "no one consideration is dispositive." Weigel, 302 F.3d at 381.

The Defendant argues that the 15 month delay between Berninger's complaint to the EEO and her termination establishes that there is no temporal proximity between the protected conduct and the adverse employment action. Berninger counters this proposition by asserting that the relevant time frame to consider is the time between Ludwig's discovery of her protected conduct and her termination. Berninger argues that the close proximity in time, six months or less, between Ludwig's discovery of her complaint to the EEO and his decision to terminate her "easily permits a reasonable inference of causal connection" (doc. 16).

10

All of the authority cited by both the Defendant and Berninger in their briefs measures the relevant time period in a causation analysis as the time between the actual exercise of the protected conduct and the adverse employment action.  Berninger cites no authority supporting the proposition that the relevant time frame should begin not with her decision to engage in protected activity, but instead with a new supervisor's discovery of that protected activity.  Berninger does not even provide an argument as to why this Court should measure the time frame from Ludwig's discovery of her complaint to the EEO, rather than from Berninger's complaint to the EEO itself.  There certainly may be cases in which a new supervisor's discovery of past protected activity could form the basis for a causal connection in a retaliation claim.  In this case, however, the protected activity took place 9 months or more before the decisionmaker became aware of it, and then the decisionmaker waited approximately another 6 months to terminate the employee.  Berninger does not allege exactly when Ludwig learned of her past protected activity, instead merely alleging that Ludwig learned of it "six months or less" before his decision to terminate her (doc. 16).  Without additional evidence tending to prove a causal connection, such as a retaliatory motivation on the part of the decisionmaker, this time frame is too attenuated to establish a causal connection and prove a <u>prima</u> <u>facie</u> case of retaliation.  <u>See</u> <u>Hafford v. Seider</u>, 183 F.3d

506, 515 (6th Cir. 1999) (temporal proximity of two to five months,
without additional evidence of a retaliatory animus, did not
suffice to support a finding of a causal connection).

The Defendant also argues that there is no evidence of
any retaliatory motive on the part of UC or the decisionmaker,
Ludwig, sufficient to create a causal connection.  Berninger
attempts to rebut this contention by relying on the January 2003
incident in which Astles, after being contacted by UC's Ombuds
Office, directed Berninger not to contact them again (doc. 16).
Berninger asserts that "[s]uch a directive from a manager permits
a jury to infer that UC management discourages or frowns on
complaints by employees against their supervisors" (Id.).
Furthermore, Berninger claims that her "2004 performance review
bolsters this inference" (Id.).  Berninger notes that within the
evaluation, "Mr. Ludwig chastised her for 'taking issues outside of
the department'" (Id.).  Berninger avers that "[w]hile that comment
did not specifically relate to a complaint of discrimination, it is
probative of a culture that generally discourages or disfavors
complaints of discrimination regarding one's supervisor or other
matters arising within the department" (Id.).

This is not enough to provide sufficient motivation of a
retaliatory motivation on Ludwig's or UC's part.  Astles and UC had
already been considering terminating Berninger prior to her
engaging in protected activity.  After her complaint to the EEO in

12

March of 2003, Astles was ordered to take no action whatsoever against Berninger.  Berninger does not dispute that Astles complied with this order.  When Astles met with Ludwig to discuss Ludwig's transition into the Department, Berninger does not dispute that Astles in no way singled Berninger out, and made no comment on individual employees.  Astles conferred no retaliatory motivation onto Ludwig when Ludwig took over the position and became Berninger's supervisor.

Ludwig did indeed learn of Berninger's protected activity at some point prior to his decision to terminate her.  But that does not automatically confer on him a retaliatory motivation.  None of the P.I.s that continued to complain about Berninger to Ludwig expressed a retaliatory motivation against Berninger.  Berninger's reliance on Astles' comments in January of 2003 and Ludwig's admonition not to "take things outside of the office" may raise a slight doubt.  However, "[t]he mere existence of a scintilla of evidence in support of [Berninger's] position [is] insufficient."  Anderson, 477 U.S. at 252.  Berninger must do more than raise such a "metaphysical doubt" and provide "significant probative evidence" of a retaliatory motivation on the part of Ludwig and UC.  See Matsushita, 475 U.S. at 340.  Berninger has not done so, and the time frame, coupled with the lack of any evidence of a retaliatory motivation for the decision to terminate Berninger's employment, mean that Berninger has failed to establish

13

a <u>prima</u> <u>facie</u> case of retaliation under Title VII.

**Conclusion**

      For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 10) is GRANTED, and this case is dismissed.


      SO ORDERED.


Dated: February 8, 2006      <u>/s/ S. Arthur Spiegel        </u>

                                  S. Arthur Spiegel
                                  United States Senior District Judge